Error.

---

\*ALBEMARLE LUMBER COMPANY v. THOMAS P. WILCOX, Sheriff.

*Contract—Sale—Delivery—Damages.*

1. When C. agrees to deliver on board plaintiff's schooners at certain landings lumber every month till, in the aggregate, it shall amount to 4,500,000 feet, with the further stipulation that such cargo shall be shipped from the landing to Elizabeth City at plaintiff's risk, and there measured, inspected and paid for : *Held*, that the plaintiff was entitled to recover two cargoes, so shipped, in an action of claim and delivery brought against a creditor of C., who had caused one cargo to be seized before, and the other after, being discharged at Elizabeth City, under a warrant of attachment issued in an action against C.

2. When property purporting to be sold is so separated as to be fully identified and distinguished from other property of like kind, and the price is certain, or, by the terms of agreement, can be ascertained (as in our case by measurement and inspection), the payment of any part of the price as earnest money, or by note in lieu of it, or the delivery of the property, postponing the settlement until the quantity can be definitely determined, makes the sale complete.

3. Where there is an actual delivery, but no distinct agreement as to the exact price of an article, and no means provided of making it certain, the title does not pass, and, if the person consume the article so delivered to him, he becomes liable on an implied promise to pay the reasonable value, but not by force of the inchoate contract to sell.

---

\*Head-notes by AVERY, J.

This was an ACTION brought to recover two cargoes of lumber seized by the defendant, who was Sheriff, by virtue of an attachment, and tried before *Brown, J.*, at the Fall Term, 1889, of the Superior Court of PASQUOTANK County. The testimony was as follows:

Calvin Conard testified as follows to contract, dated July 26, 1888: "I contracted in said writing to sell plaintiff 4,500,000 feet of lumber. In pursuance thereof, I shipped two cargoes last January, on schooners *Hill* and *Scud*, from Smith's Creek, Pamlico County, at mills of Harrison & Betts. The *Hill's* cargo was shipped January 29, 1889, and the *Scud's* on January 31, 1889. The entire lumber was delivered to plaintiff's company on board said vessels at Smith's Creek, and the delivery was there made. It was not measured there; settlement was to be made by measurement and inspection at Elizabeth City. I had taken the cut of Harrison & Betts' mills for 1889 at $7.50 per thousand feet. I received the bill of lading for the lumber about four days after shipment, and I at once endorsed the same to plaintiff. The plaintiff took the responsibility and risk of shipment from Smith's Creek to Elizabeth City. I am not sure that I received bill of lading before 12 M., February 4, 1889. But as soon as I received it I indorsed it and handed it to plaintiff's secretary. I had not received the payment from plaintiff when the attachments were levied. I was in Philadelphia when vessels were loaded at Smith's Creek."

Charles Bell testified: "The *Scud* arrived at Elizabeth City February 1, 1889, and the *Hill* on February 2, 1889. The lumber was put on the wharf of the Albemarle Lumber Company, the plaintiff. When the Sheriff levied the attachment, the lumber was in the *Hill*, the vessel then laying at the wharf. The *Scud* had been discharged. The *Hill* contained 53,629 feet in cargo, and the *Scud* 74,269 feet. I am plaintiff's agent at Elizabeth City; head office is in Philadelphia; lumber worth $8.50 per thousand

feet. Plaintiff paid the freight—$1.40 per thousand feet. The lumber had not been counted or inspected when the attachment was levied."

T. P. Wilcox testified for defendant: " I seized the lumber under the attachment and papers in evidence at the date thereon stated (February 4, 1889) in the return, and the plaintiff took it under proceedings in claim and delivery in this cause."

Defendant introduced record of suit and attachment proceedings in favor of *Harrison & Betts* v. *Calvin Conard.*

The Court charged the jury that if there had been a *bona fide* and actual delivery of the lumber to the plaintiff under a contract of sale and for valuable consideration at Smith's Creek, and before attachment levied, then the plaintiff would acquire a title thereto, although it had not paid Conard for it; that if the jury believed the testimony, the plaintiff was entitled to a favorable response upon the issue.

The defendant asked the Court to charge the jury—

1. That if they believed the lumber sold by Calvin Conard to plaintiff was to be shipped by Conard, from Smith's Creek to Elizabeth City, and there counted, measured and inspected, and afterwards settlement to be made on basis of said account and measurement in cash, and the same had not been counted, inspected and settled for at the time the attachment was levied and seized by the defendant Sheriff, title did not pass to plaintiff, and it cannot recover.

Court refused, and defendant excepted.

2. That, upon all the facts being admitted, the title to said lumber did not pass to plaintiff, and plaintiff cannot recover.

Court refused, and defendant excepted.

The verdict was as follows, viz.:

1. Is the plaintiff the owner, and entitled to the possession, of the lumber described in complaint? Ans. Yes.

2. What was the value of said lumber? Ans. $1,087.13.

There was a verdict and judgment for plaintiff. Defendant excepted to the ruling of the Court refusing to charge as requested, and to the charge as made, and assigned the same as error, and appealed.

Agreement, made this the 26th day of July, 1888, by and between Calvin Conard, of this city and county of Philadelphia, Pa., of the first part, and the Albemarle Company, of Elizabeth City, N. C., of the second part: Witnesseth, that the said party of the first part hereby sells to the party of the second part, and the said party of the second part hereby purchases from the party of the first part, the following Log Run N. C. Lumber, culls and thin boards out, as hereinafter described, to be loaded at the respective mills, and delivered free on board vessels, viz.: Delivered free on board vessels at point of shipment, 1,500,000 feet "Smith's Creek" Lumber (Harrison & Betts), $7.50 per M.; 1,500,000 feet "New Berne" (Blades & Bro.), $7.75 per M.; 1,500,000 feet "Pamlico Lumber" Co., Blount Creek, $8 per M. All the above lumber to be counted and inspected at Elizabeth City, and settlement made on basis of said account, cash on delivery, less 2 per cent. It is further agreed, on the part of the party of the first part, that the purchase by the party of the second part of this lumber, will protect party of the second part, in so far as to guarantee that the lumber will be ready for shipment, proportionate quantity each month, between this date and January 1st, 1889, before which date all is to be ready for shipment. It is agreed by party of first part, that he will protect the party of second part in the matter of transportation of the above lumber from the respective mills to Elizabeth City by having vessels already chartered, if required by party of second part, to carry the said lumber, or any proportion required by party of second part, and at the lowest rates obtained by the said party of the first part, It is agreed that all the lumber from Pamlico Lumber Com-

pany mill is to be kiln-dried, while that from New Berne is to be also kiln-dried, or largely so; that from Smith's Creek is to be air-dried. It is agreed that all the lumber is to be in good shipping condition when delivered to the vessels at point of shipment.

In witness whereof, the said Calvin Conard has hereunto set his hand and seal, and the said Albemarle Lumber Company has affixed its corporate seal, the day and year first above written.

THE ALBEMARLE LUMBER CO.,
Calvin Conard, Vice-President.

*Mr. J. H. Sawyer* (by brief), for plaintiff.
*Mr. C. W. Grandy,* for defendant.

AVERY, J.—after stating the facts: We concur with the Judge below in the opinion that, if the testimony was true or was believed by the jury, the title to the lumber vested in the plaintiff when it was placed on board the Company's schooners at Smith's Landing.

" A sale is the transfer of the absolute or general property in a thing for money," or anything of value. When the property purporting to be sold is so separated as to be fully identified and distinguished from other property of like kind, and the price is certain, or by the terms of the agreement can be ascertained (as in our case, by measurement and inspection at Elizabeth City), the payment of any part of the price as earnest money, or by note in lieu of it, or the delivery of the property, postponing the settlement till the quantity can be definitely determined, makes the sale complete. *Waldo* v. *Belcher,* 11 Ired., 609; *Morgan* v. *Perkins,* 1 Jones, 171; *Cohen* v. *Stewart,* 98 N. C., 97; *May* v. *Gentry,* 4 Dev. & Bat., 117. Where there is an actual delivery, but no distinct agreement as to the exact price of an article, and

no means provided of making it certain, the title does not pass, and if the person consume the article so delivered to him, he becomes liable, upon an implied agreement, to pay its reasonable value, but not by force of the inchoate contract to sell. *Wittkowsky* v. *Wasson*, 71 N. C., 451; *Devane* v. *Fennell*, 2 Ired., 36. The lumber belonged to the plaintiff company, in any aspect of the testimony, when it was seized by the Sheriff under the warrant of attachment.

Affirmed.